By the Coubt.—Speib, J.
Section 6 of the act specifically defines the business and object of this savings bank, which are to receive deposits of moneys, and to invest them or loan the same on certain specified State, United States, city or county securities of this State, or in such other manner as is authorized by the act of incorporation, for the use, interest and advantage of the depositors. It also provides that no president, vice-president, trustee, officer or servant of the corporation, shall directly or indirectly borrow its *251 funds or its deposits, or in any manner use the same, “ except to pay necessary expenses.” It further provides ‘ ‘ that no money deposited in the said savings institution shall be invested except in the securities and stocks mentioned in the section, or on bonds and mortgages of unincumbered real estate, worth at least double the amount of the loans to be secured thereby.”
It clearly appears that the defendant loaned, by way of temporary investments, the funds of the bank to the Avenue C Railroad Company, and to one Col-burn, partly upon promissory notes, and partly without any evidence of debt whatever, but in no instance upon any of the securities, stocks, bonds or mortgages permitted by the act of incorporation. The testimony is uncontradicted that Smith, the president, the defendant, the vice-president, and the bookkeeper, Selmes, had a full and clear understanding during the whole time that these overdrafts and loans to the Avenue C Railroad Company were to be protected and taken care of at all events. I am unable to see that, so far as the verdict includes the balance of these overdrafts and loans to this railroad company, that any exception can be taken to it. The evidence in the case fully sustains the findings of the jury in this particular.
The case discloses that there was an account kept by Mr. Selmes, the bookkeeper, of the loans made to Colburn, and that the whole sum amounted to $99,860.74, and that there was paid on account thereof, which had been credited to Colburn, an amount leaving a balance, as due from him, the sum of $15,570.28. I am of opinion that the whole of this sum cannot be charged to the defendant. In other words, the sum of $5,500, included in this balance, was borrowed by Col-burn from Selmes, the bookkeeper, on three several distinct checks drawn by friends of Colburn, payable to his order, and indorsed by him about June 21, 1870, *252 without the knowledge of the defendant, and when he was on his way to Europe. The checks were cashed by Selmes, after advising with Smith, the president, with the money of the savings bank, and were put into the drawer and counted as cash. These checks remained in the drawer for about six months, continued to be counted as cash, and when it became necessary for an account to be made up at the end of the year to show to the superintendent, it was deemed important to get these checks out of the way, as it would not answer to call them money, especially as the president and the bookkeeper had tried their best to collect them from Colburn and had failed; It was then determined to make this a call loan, and put it into defendant’s account, which was done on December 31, 1870. The only proof that the defendant had anything to do with the loan to Colburn relied upon by the plaintiff’s counsel, and which is all that appears in the case, relates to a conversation between Selmes and defendant, as testified to by the former. He says he told defendant—as I understand his testimony—that the bank had to make up its bank account, and those checks must be got out of the way, and he had, or would make it a call loan by defendant. The reply was, “Do whatever you please. Charge it to Col-burn.” This was not a ratification of the original loan, which was made by the witness Selmes, and for which the defendant could be made liable. Selmes does not appear to have had any authority from Boche to loan the money and count the security which he took as cash in his money drawer. Batification is the subsequent adoption of certain acts, which is equivalent to a prior authority. The witness Selmes had been before particularly examined by plaintiff’s counsel as to what he knew about' the loans to Colburn, and his answer was, “He, defendant, spoke to me about all these, except this $5,500. That has to be explained, you *253 know.” It is also to be remembered that this witness stated “that, after the overdrafts had been accumulating, Mr. Smith, Mr. Roche and myself, had a perfect understanding all the time as to these overdrafts and loans to the Avenue C Railroad Company, that they were to be taken care of and protected—that was the first thing to be done, and we were to make the explanations afterwards.” This arrangement was not extended to the Colburn loans.
The judgment and order must be reversed and a new trial had, with costs to appellant to abide the event, unless the plaintiff deduct from the verdict the sum of §5,500, with interest from December 31, 1870, in which case the judgment and order must be affirmed without costs on this appeal.
Freedman, J., concurred,